# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Corey J. Butler,

       Plaintiff,

                                Civ. No. 08- 5196 (RHK/JJK)
                                **MEMORANDUM OPINION**
                                **AND ORDER**

v.

Bloomington Public Schools, ISD #271,

       Defendant.

_____

Jennie M. Brown, Brown Law Office, Eden Prairie, Minnesota, for Plaintiff.

James R. Andreen, Erstad & Riemer, PA, Minneapolis, Minnesota, for Defendant.
_____

## INTRODUCTION

Plaintiff Corey J. Butler alleges that his former employer, Defendant Bloomington Public Schools, ISD #271 ("Bloomington"), unlawfully discriminated against him based upon his mild mental retardation. This matter comes before the Court on Bloomington's Motion for Summary Judgment, which for the reasons set forth below, will be granted.

## BACKGROUND

Bloomington hired Butler as a Kennedy High School base custodian in January 1994. (Andreen Aff. Ex. 62.) During his tenure, Butler amassed a lengthy record of performance issues described below, which Bloomington contends ultimately resulted in his termination in 2007. (Id. Ex. 56.) While acknowledging the receipt of several reprimands and warnings, Butler denies the factual allegations contained therein,

contending he was an excellent worker while employed by Bloomington. (Butler Dep. Tr. at 99.)

Butler's first documented performance issue occurred in May 1994, when he was given a written warning for leering at female students. (Andreen Aff. Ex. 1.) During this same time period, he received his first written evaluation, which indicated that he needed to improve upon his general work ability, technical knowledge, and understanding of responsibilities. (Id. Ex. 3.) In August 1997, Butler was written up for his failure to adequately clean assigned bathrooms, and in October 1997, he was written up for talking on the phone during work hours and being dilatory in completing his work. (Id. Exs. 4-5.)

In December 1997, Butler was transferred to Oak Grove Intermediate School ("Oak Grove") as a base custodian. (Id. Ex. 63.) While at Oak Grove, he continued to have documented performance issues. In January 1998, Butler was verbally warned for his failure to follow protocol when calling in sick and for leaving the workplace early. (Id. Ex. 6.) In February 1998, he was further warned that he needed to improve upon his cleaning of bathrooms and drinking fountains. (Id. Ex. 8.)

On March 1, 1998, Butler was transferred back to Kennedy High School, where he was to receive increased supervision. (Id. Exs. 7-9.) He was informed that his work performance needed to improve upon reassignment. (Id.) In April 1998, Butler's performance had improved. (Id. Ex. 10.) However, in September 1998, he was retrained on his bathroom cleaning duties. (Id. Ex. 14.) In March 1999, Butler was told that his

cleaning of floors was insufficient, and in May 1999, he was found sleeping on the job. (Id. Exs. 15-16.)

In July 1999, Butler was transferred to Jefferson High School as a base custodian, but his performance issues persisted. (Id. Ex. 64.) During his four years at Jefferson High School, he was given verbal and written warnings/reprimands for taking breaks at unassigned times, throwing away gym equipment, poor work quality, poor communication skills, improper disposal of car parts and yard waste, poor attendance, and making inappropriate statements. (Id. Exs. 19, 22, 32-33, 35-38.) It was determined that he needed to be retrained, which occurred in October 2004. (Id. Exs. 38, 41.)

In September 2005, Butler was transferred to a groundskeeper position at Oak Grove. (Id. Ex. 65.) However, in October of that same year, a complaint was made regarding Butler's grass cutting detail. (Id. Ex. 45.) In November 2005, he was given a written warning for damaging electrical equipment, and in December 2005, he was further warned for equipment damage. (Id. Exs. 46, 48.) Finally, in January 2006, Butler was reprimanded and told he would be removed from the groundskeeping position. (Id. Ex. 61.)

Butler was transferred to Valley View Middle School as a base custodian in March 2006, where he was given an orientation session and supervision. (Id. Exs. 52, 66.) In January 2007, a supervisor discovered that Butler's assigned bathrooms were not cleaned properly. (Id. Ex. 55.) A review of the security camera recordings revealed that he spent a total of three minutes cleaning the bathrooms, using improper cleaning equipment and

disinfectants.  (Id. Ex. 55, St. George Aff. ¶¶ 4-11.)  Reviewing several security recordings again in February 2007, it was discovered that Butler was improperly throwing away towels, using improper disinfectants, was at times only mopping the bathroom floors, or only emptying trash cans, without doing any further cleaning of the bathrooms, and was cleaning drinking fountains with the same towels used to clean bathrooms.  (Id.)

On February 23, 2007, Butler was placed on administrative leave pending an investigation into his conduct caught by the security camera.  (Andreen Aff. Ex. 56.)  He was subsequently terminated on March 12, 2007, with the termination letter discussing nine separate occasions between January and February 2007 where Butler used inappropriate cleaning procedures on assigned bathrooms and drinking fountains, leaving unsanitary conditions.  (Id.)

Butler has been diagnosed as mildly mentally retarded.  (Mem. in Opp'n Ex. 8.)  As a result, he claims he is "learning disabled," requiring him to ask a lot of questions.  (Butler Dep. Tr. at 97, 104.)  Butler further asserts that he was "picked on" while employed at Bloomington as a result of his mental disability.  (Id. at 103.)  Specifically, he alleges that he was called "brain dead and stupid and retarded" by co-workers and supervisors.  (Id.; Butler Aff. ¶ 1.)  Nevertheless, despite his mental impairment, Butler believes that he did a "great job" working for Bloomington, and did not require assistance to complete his work.  (Butler Dep. Tr. at 69, 98-101.)

Butler grieved his termination pursuant to his union contract.  (Andreen Aff. Ex. 57.)  The arbitrator found that Butler's termination was with "just cause."  (Id. Ex. 58.)

4

He then filed the instant action, alleging disability discrimination under the Americans with Disabilities Act ("ADA") (Counts 1 & 2), unlawful termination (Count 3), and defamation (Count 4). Bloomington now moves for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.      Butler is not a "qualified individual with a disability"**

Under the ADA, employers are prohibited from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to

qualify as an individual with a disability under the ADA, a plaintiff must demonstrate

that: (1) he suffers from a physical or mental impairment that substantially limits one or

more of his major life activities; (2) he has a record of such an impairment; or (3) he is

regarded as having such an impairment. 42 U.S.C. § 12102(1).[3]

Butler asserts that he is disabled as a result of his mild mental retardation.[4] Thus,

to qualify as disabled under the ADA, Butler must show that his mild mental retardation

substantially limits him in a major life activity. Fjellestad v. Pizza Hut of Am., Inc., 188

F.3d 944, 948 (8th Cir. 1999). An impairment is substantially limiting if it renders a

person:

> (i) Unable to perform a major life activity that the average person in the
> general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which
> an individual can perform a particular major life activity as compared to the
> condition, manner, or duration under which the average person in the general
> population can perform that same major life activity.

---

[3] After the present action was filed, the ADA was amended and the holdings of Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) were expressly overruled. ADA Amendment Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (codified as amended in scattered sections of Title 42, United States Code). However, the parties have cited no authority, and the Court finds none, holding that such amendments are to be applied retroactively. Accordingly, the Court analyzes the present Motion under the law governing at the time this action was filed.

[4] Butler does not assert that he has a record of impairment or that Bloomington regarded him as impaired.

29 C.F.R. § 1630.2(j)(1); Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1088

(8th Cir. 2001). Butler asserts that he is limited in his ability to work and learn. Both

constitute "major life activities." 29 C.F.R. § 1630.2(i).

### A. Butler's ability to work

In order to demonstrate that he is substantially limited in his ability to work, Butler

must demonstrate that he is significantly restricted, in comparison with the average person

with comparable training, skills, and abilities, in his ability to perform either (1) a class of

jobs or (2) a broad range of jobs in various classes. See 29 C.F.R. § 1630.2(j)(3)(i).

Thus, Butler must demonstrate that he is precluded from working more than one type of

job, a specialized job, or a particular job of choice. Sutton, 527 U.S. at 492. To meet this

burden, he must submit "evidence concerning the accessible geographic area, the numbers

and types of jobs in the area foreclosed due to the impairment, and the types of training,

skills, and abilities required by the jobs." Bailey v. Georgia-Pacific Corp., 306 F.3d

1162, 1168 (1st Cir. 2002). However, Butler has provided the Court with no evidence

that he is disqualified from performing any job. Thus, he cannot establish that he is

substantially impaired in his ability to work. See Whitney v. Greenberg, Rosenblatt, Kull

& Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001) (plaintiff not considered disabled under

ADA when she presented no evidence that her cognitive disability "significantly

restricted her ability to perform either a class of jobs or a broad range of jobs in various

classes") (internal quotation marks and citation omitted).

More importantly, Butler himself contends that he was <u>not</u> substantially limited in

his ability to work. (Butler Dep. Tr. at 98-100.) When asked whether he was

substantially limited in any activities as a result of his mental limitations, he responded

that he was not. (<u>Id.</u> at 98.) When he was further asked whether he was able to perform

his job responsibilities at Bloomington despite his mental limitations, he responded that

he was. (<u>Id.</u> at 100.) Accordingly, Butler has not demonstrated a substantial impairment

in the major life activity of working.

**B.      Butler's ability to learn**

In addition to the major life activity of working, Butler contends that he is

substantially limited in his ability to learn. In support of this contention, he has submitted

the psychological assessment of Dr. Stacey Gerken, which states that Butler "will show

deficits in learning new information and tasks . . . [and] will struggle with tasks requiring

complex multi-step problem solving." (Mem. in Opp'n Ex. 8.) However, Dr. Gerken's

report does not opine on the <u>extent</u> of Butler's learning disability, nor does it compare his

ability to learn with the ability of the average person.[5]

In order to survive summary judgment, Butler must "provide specific facts

establishing that there is a genuine issue of material fact as to whether he is substantially

limited." <u>Scheerer v. Potter</u>, 443 F.3d 916, 919 (7th Cir. 2006). Thus, "conclusory

allegations will not do." <u>Id.</u> Here, Butler's general assertions that he is "learning

---

[5] Butler also submitted the report of Michael Bortel, who diagnosed Butler as mildly mentally
retarded. (Mem. in Opp'n Ex. 7.) This report contains no assessment whatsoever regarding the

disabled," has "difficulty learning new tasks," and is a "slow learner," are simply

insufficient without any evidence indicating the extent and severity of Butler's learning

restrictions.  See Littleton v. Wal-Mart Stores, Inc., 231 Fed. Appx. 874, 877 (11th Cir.

2007) ("[Plaintiff] pointed to no evidence which would create a genuine issue of material

fact regarding whether he is substantially limited in the major activity of learning because

of his mental retardation."); Martin v. Discount Smoke Shop, Inc., 443 F. Supp. 2d 981,

994 (C.D. Ill. 2006) ("[p]laintiff has not provided this court with sufficient 'specific facts'

which establish a genuine issue of material fact as to whether she is substantially limited

in a major life activity" as a result of her mild mental retardation).  While Butler has

certainly put forth evidence of a learning limitation, he has not put forth any facts

demonstrating a substantial limitation.

In addition, as described above, Butler has stated that he is not substantially

limited in any major life activity and was able to perform his responsibilities at

Bloomington without substantial difficulty.  (Butler Dep. Tr. at 98-100.)  Moreover,

Butler graduated from high school and vocational school, notwithstanding his mental

limitations, and was able to train other Bloomington custodians on their job

responsibilities.  (Id. at 102-03; Mem. in Opp'n Ex. 8.)  Accordingly, Butler has not

demonstrated a substantial impairment in the major life activity of learning.  Thus, while

there is little doubt that Butler has certain limitations as a result of his mild mental

---

extent to which the condition affects Butler's life activities or cognitive ability.

retardation, he has not met his burden of demonstrating a substantial limitation in a major life activity.  On this basis alone, Butler's ADA claims must be dismissed.

## II.     Even if Butler is a "qualified individual with a disability," his discrimination claims fail

Because Butler does not qualify as an "individual with a disability" under the ADA, the Court's analysis need go no further.  However, assuming that Butler did qualify as disabled under the ADA, his claims would nevertheless fail.  While inarticulately presented, Butler's assertions constitute three separate disability discrimination claims: 1) discriminatory termination; 2) hostile work environment; and 3) failure to accommodate.  The Court addresses each below.

### A.     Discriminatory termination

Butler asserts that his termination violated the ADA.  The Court analyses such claims utilizing the tripartite burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  E.g., Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998).  Under that framework, a plaintiff must first establish a prima facie case of discrimination, which requires the plaintiff to show that he: (1) is disabled; (2) is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) suffered an adverse employment action because of his disability.  Id.  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse

employment action.  Id. at 872-73.  If the employer does so, the plaintiff must then establish that the proffered reason is a pretext for discrimination.  Id. at 873.

Here, the Court assumes *arguendo* that Butler has established a prima facie case of disability discrimination.  The burden thus shifts to Bloomington to articulate a legitimate, nondiscriminatory reason for the termination of Butler's employment, which it has done by citing Butler's poor work performance.  See Hannoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1047 (8th Cir. 2003) ("[D]efendants easily met their burden of production by alleging poor performance as the legitimate, non-discriminatory basis for [plaintiff's] termination.")  Thus, to survive summary judgment, Butler must bring forth sufficient evidence to create a genuine issue that Bloomington's proffered reason is pretextual.  In order to show pretext, Butler may (1) demonstrate that Bloomington's stated reason for his termination is "unworthy of credence" or (2) "persuad[e] the court that a prohibited reason more likely motivated" his termination than the proffered reason.  Stallings v. Hussmann Corp., 447 F.3d 1041, 1052 (8th Cir. 2006).[6]

First, Butler asserts that the proffered reason for his termination is pretext because it has no basis in fact, and therefore is "unworthy of credence."  Specifically, he asserts that he was a good employee, citing a handful of positive reviews by co-workers and

---

[6] Bloomington asserts that Butler is "collaterally estopped from denying [its] legitimate business reason" for his termination because an impartial arbitrator determined that there was "just cause" for the termination.  (Mem. in Supp. at 20.)  The Court notes that the arbitrator's award addresses many of the issues presented here and makes factual findings consistent with that of the Court.  (Andreen Aff. Ex. 58.)  However, the Court need not address the issue of collateral estoppel as it finds that Bloomington had a legitimate business reason for Butler's termination,

supervisors.  (Mem. in Opp'n Exs. 2-3, 5, 11-12, 14-16.)  However, Butler admits that he

received a number of negative performance evaluations and reprimands while employed

by Bloomington.  (Butler Dep. Tr. at 98-99.)  He further acknowledges that he was

retrained on two or three occasions.  (Id. at 104.)  Finally, the Court has been presented

with a substantial record of Butler's negative performance reviews, warnings, reprimands,

and retraining sessions.  Thus, the Court concludes that no reasonable jury would find that

the proffered reason for termination is "unworthy of credence."  See Phillips v. DAP,

Inc., 10 F. Supp. 2d 1334, 1336 (N.D. Ga. 1998).  ("[W]hile Plaintiff[] may dispute [his

employer's reason for termination], this alone is not enough to raise a genuine issue as to

pretext, absent any evidence that [the employer] was motivated by a desire to get rid of

[plaintiff] because he was mentally retarded.").

Second, Butler asserts that "similarly situated" employees were treated differently

from him, demonstrating that the stated reason for his termination was pretext.

Specifically, he asserts that Bloomington employee Steve Malecky was treated differently

from him.  (Mem. in Opp'n at 3.)  However, Butler has proffered no evidence indicating

that Malecky was similarly situated to him.[7]  Indeed, the Court has no knowledge of

whether Malecky had similar performance issues or whether Malecky was terminated or

which as described below, has not been shown to be pretextual.
[7] Butler does note that Malecky also was mentally challenged.  (Mem. in Opp'n at 3.)
Accordingly, if Malecky was treated differently from Butler inasmuch as he was not terminated
for similar performance deficiencies, such differential treatment cannot be attributed to Butler's
mental impairment, which Malecky shares.

12

otherwise disciplined. Accordingly, Butler has failed to identify any other employee who was "similarly situated" to him, and therefore has failed to show pretext. See Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005) (noting that the test for determining whether a co-worker is similarly situated, at the pretext stage, is "a rigorous one"- plaintiff must show that "the misconduct of more leniently disciplined employees [was] of comparable seriousness").

Finally, Butler argues that he can establish pretext because he was ridiculed by co-workers and supervisors as a result of his mental limitations. (Mem. in Opp'n at 3.) While such teasing is undoubtedly inappropriate, it does not demonstrate that he was fired because of his mental limitations. Indeed, Butler was employed by Bloomington for 13 years, with such unsavory treatment presumably occurring throughout. Moreover, in addressing the issue of pretext, the Court must view the evidence "in light of the employer's justification." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (internal quotation marks and citation omitted). The evidence in this case demonstrates that Bloomington spent years attempting to accommodate and work with Butler's performance issues. Bloomington trained and retrained him, transferred him to different positions within the school district, and presented him with several warnings and second chances. Finally, after Butler was discovered to be cleaning in an unsanitary manner, Bloomington terminated his employment. This evidence reveals an employer forced to make a termination decision based upon its basic sanitation needs, not upon a discriminatory animus.

13

## III.    Hostile Work Environment

Butler asserts a hostile work environment claim as a result of the name-calling he endured while employed by Bloomington.  To establish a hostile-work-environment claim:

> A plaintiff must show (1) he . . . belonged to a protected group; (2) he . . . was subjected to unwelcome harassment; (3) the harassment was based upon [protected group status]; (4) the harassment affected a term, condition, or privilege of his . . . employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.

Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 910 (8th Cir. 2006) (internal quotation marks and alteration omitted).[8]

To establish that alleged harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment, it must be both subjectively and objectively offensive such that a reasonable person would find it to be hostile or abusive. Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004).  In assessing this issue, a court may look to factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id.

---

[8] To analyze a hostile-work-environment claim under the ADA, courts often utilize the "standards developed elsewhere in our anti-discrimination law."  Shaver v. Indep. Stave Co., 350 F.3d 716, 720 (8th Cir. 2003).  Accordingly, the Court references the well-developed Title VII case law in analyzing Butler's hostile-work-environment claim.

The naming-calling that occurred at Bloomington, while undoubtedly

inappropriate and hurtful, was insufficiently severe to affect a term or condition of

Butler's employment. As stated above, "anti-discrimination laws do not create a general

civility code." Shaver v. Indep. Stave Co., 350 F.3d 716, 721 (8th Cir. 2003). In fact, the

Eighth Circuit has noted that "[s]imple teasing . . . will not amount to discriminatory

changes in the terms and conditions of employment." Erenberg, 357 F.3d at 792

(internal quotation marks and citation omitted); accord Shaver, 350 F.3d at 720-22 (name

calling, standing alone, is not severe or pervasive enough to establish a hostile-work-

environment claim under the ADA). Accordingly, Butler's hostile-work-environment

claim fails.

## IV.    Failure to Accommodate

Finally, Butler asserts an ADA claim for failure to accommodate. Specifically, he

argues that Bloomington failed to accommodate his disability by not providing him with

needed supervision and job restructuring.

Under the ADA, an employer is required to provide reasonable accommodations

for the known physical or mental limitations of an otherwise qualified employee with a

disability, unless the requisite accommodation would impose an undue hardship on the

employer's business. 42 U.S.C. § 12112(b)(5)(A). A "reasonable accommodation" is

defined as:

> job restructuring, part-time or modified work schedules, reassignment to a
> vacant position, acquisition or modification of equipment or devices,
> appropriate adjustment or modifications of examinations, training materials or

policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

To establish a claim for failure to accommodate under the ADA, Butler must demonstrate that: (1) Bloomington knew of his disabilities; (2) he requested accommodations or assistance; (3) Bloomington did not in good faith assist him in seeking such accommodations; and (4) he could have been reasonably accommodated but for Bloomington's lack of good faith. Battle v. United Parcel Serv., Inc., 438 F.3d 856, 862-63 (8th Cir. 2006). Where the employee requests accommodation, the employer must engage in an "informal, interactive process" with the employee to identify the limitations caused by the disability and the potential reasonable accommodations to overcome those limitations. Id. at 862.

Here, there is no evidence that Butler requested any accommodation, which is fatal to his claim. While it is not necessary that Butler make a formal written request, or use any "magic words," Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 660 (8th Cir. 2001), he must demonstrate that he provided Bloomington "with enough information that, under the circumstances, [Bloomington] can be fairly said to know of both the disability and desire for an accommodation." Ballard v. Rubin, 284 F.3d 957, 962 (8th Cir. 2002) (internal quotation marks and citation omitted). Thus, because Butler failed to request an accommodation, his claim fails.

Moreover, Butler has acknowledged that he did not need an accommodation to do

his work at Bloomington. (Butler Dep. Tr. at 98-101.) Indeed, he agreed that he "didn't

need any assistance from the school district to do [his] job" and "didn't need the school

district to change [his] job in any way." (Id. at 101.) Thus, "because [Butler] argues that

he was capable of performing the essential functions of [his] position, he cannot argue

that he was entitled to any accommodation." Lowery, 244 F.3d at 660. Finally, even if

Butler had requested and needed the accommodations of supervision or job restructuring,

he acknowledges that he was transferred to several new positions during his 13 years with

Bloomington, and that several of those positions provided supervision. (Butler Dep. Tr. at

102.) Therefore, he was given the accommodations he now says he did not receive.

Accordingly, Butler's accommodation claim fails.

**V.      The Court declines to exercise supplemental jurisdiction over Butler's state-law claims.**

Having concluded that Bloomington's Motion for Summary Judgment must be

granted vis-à-vis Butler's ADA claims, the Court's original jurisdiction has been

extinguished. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may, *sua sponte*, decline to

exercise supplemental jurisdiction over a pendent state-law claim if it has dismissed all

claims over which it has original jurisdiction. Johnson v. City of Shorewood, 360 F.3d

810, 819 (8th Cir. 2004). When all federal claims are eliminated before trial, the balance

of factors to be considered in deciding whether to exercise supplemental jurisdiction over

a pendent state-law claim typically militates against exercising jurisdiction. Id. (citing

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Based on Section

1367(c)(3) and Johnson, the Court declines to exercise supplemental jurisdiction over

Butler's state-law unlawful termination and defamation claims.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Bloomington's Motion for Summary Judgment (Doc. No. 19) is

**GRANTED.** Butler's federal claims (Counts 1 & 2) are **DISMISSED WITH**

**PREJUDICE** and Butler's state-law claims (Counts 3 & 4) are **DISMISSED**

**WITHOUT PREJUDICE**.[9]

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 8, 2010                           s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge

---

[9] See 28 U.S.C. § 1367(d).